OPINION
{¶ 1} K.F. is appealing the judgment of the Clark County Common Pleas Court Juvenile Division, which determined him to have committed a rape for which he received probation and later determined him to have violated that probation, sentencing him to the department of youth services.
 {¶ 2} When he was thirteen, K.F. was charged with one count of rape, which would be a first degree felony if K.F. were an adult. The complaint alleged that K.F. had engaged in sexual conduct with his four year old half sister. On March 8, 2001, K.F. was arraigned and sought to enter an admission to the charge. However, since he was not represented by counsel and the court found a conflict of interest existed between K.F. and his parents because they were the parents of both the perpetrator and the victim, the court entered a denial on K.F.'s behalf. The court also appointed the public defender's office to represent K.F. The court ordered that K.F. remain in detention as his parents requested that he not return to their home.
 {¶ 3} On July 12, K.F. appeared in court with counsel and entered an admission to the rape charge. Prior to this appearance, K.F.'s mother had mailed the trial court a letter that it acknowledged receiving in which she stated that she "did not feel that [she] could make choices in [K.F.'s] best interest." Subsequently, K.F. was sentenced to the department of youth services for a minimum of one year, maximum of his twenty-first birthday. The court then suspended that sentence and ordered that K.F. continue on probation and be placed in Oesterlen Services.
 {¶ 4} During the time period in which K.F. was on probation, his mother sent the trial court another letter. In this letter dated February 22, 2002, she expressed her concerns that K.F. was having difficulty in the program and that his mental health issues were not being addressed.
 {¶ 5} On February 27, 2002, K.F.'s probation officer filed a complaint alleging that K.F. had violated his probation. The complaint alleged that K.F. violated Rule #8 of his probation, by being "disruptive in his behaviors and [failing to follow] the rules and guidelines that Oesterlen has set for the facility," since being placed at Oesterlen Services for Youth. Rule #8 of K.F.'s probation states," [y]ou shall accomplish all case plan and/or counseling objectives successfully, which are now and will be set for you throughout your supervision [by] Oesterlen Services for Youth."
 {¶ 6} K.F. appeared in court without counsel for the arraignment on the probation violation on February 27, 2002. K.F. sought to enter an admission to the charge, but his mother informed the court that she did not think K.F. understood his rights. The court then entered a denial on K.F.'s behalf. K.F.'s mother also informed the court that she wished to have K.F. represented by an attorney but that she thought K.F.'s previous attorney had provided ineffective assistance of counsel.
 {¶ 7} On March 21, 2002, K.F. again appeared in court without counsel. At this appearance, K.F. waived his right to counsel and entered an admission to the probation violation. K.F.'s mother then requested that psychological testing be completed on K.F. The court ordered this testing and continued the matter for disposition.
 {¶ 8} On April 24, 2002, K.F. appeared for the dispositional hearing in his case. At the hearing, the trial court relied on an old psychological report that was prepared in November of 2001, when K.F. initially began his treatment at Oesterlen Services, and a recent report by K.F.'s probation officer. K.F. stated that he wished to return to Oesterlen Services despite his failure after six months to have reached the first level in the program. K.F.'s mother discussed K.F.'s behavioral problems and offered two reports from his school that were less than two years old. The school reports were not admitted into evidence or considered by the court.
 {¶ 9} The representative from Oesterlen Services agreed with K.F.'s mother that K.F. had significant behavioral problems that had existed for a long period of time. Further, the representative stated that although these behaviors had caused K.F. difficulty at Oesterlen, K.F. had made some improvement and his behavior was manageable. The representative also explained that K.F.'s psychologist at Oesterlen had recently suggested some changes in his treatment. Oesterlen remained willing to work with K.F. and allow him to remain. The representative stated that it was not uncommon for individuals to have difficulty in the program for six or seven months and yet still complete the program in twelve to fourteen months. Therefore, the representative stated it was "not unusual for [Oesterlen Services] to have difficulty over this amount of time." Finally, K.F.'s probation officer stated that she was frustrated with K.F.'s lack of progress but stated that Oesterlen was capable of dealing with his problems.
 {¶ 10} At the disposition hearing, the trial court ordered that K.F.'s probation be revoked and that he be committed to the Department of Youth Services for a minimum of one year, maximum of his twenty-first birthday.
 {¶ 11} K.F. has filed this delayed appeal from his adjudications for both the rape charge and the probation violation, raising the following assignments of error:
 {¶ 12} "[1.] The trial court committed reversible error when it failed to appoint a guardian ad litem in violation of Ohio Revised Code Section 2151.281(a) and Juvenile Rule 4(B).
 {¶ 13} "[2.] The court violated Kurt K.F.'s right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, and JUV. R. 35(b) when it adjudicated him delinquent of a probation violation and order that he be committed to the Department of Youth Services."
Appellant's first assignment of error:
 {¶ 14} K.F. argues that the trial court erred in failing to appoint a guardian ad litem to represent him when a conflict existed between himself and his parents. We agree.
 {¶ 15} R.C. 2151.281(A) provides:
 {¶ 16} "The court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when either of the following applies:
 {¶ 17} "* * *
 {¶ 18} "(2) The court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian."
 {¶ 19} Juvenile Rule 4(B) provides:
 {¶ 20} "The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when:
 {¶ 21} "* * *
 {¶ 22} "(2) The interests of the child and the interests of the parent may conflict."
 {¶ 23} A guardian ad litem is defined as a "person appointed to protect the interests of a party in a juvenile court proceeding." Juv.R. 2(O). A trial court's failure to appoint a guardian ad litem when required by R.C. 2151.281(A) and Juv.R. 4(B) amounts to reversible error. In re Sappington (1997), 123 Ohio App.3d 448, 452; In reSpradlin, 140 Ohio App.3d 402, 406, 2000-Ohio-2003 citing In re Howell
(1991), 77 Ohio App.3d 80, 92.
 {¶ 24} In Sappington, this Court addressed the issue of what degree of conflict requires an appointment of a guardian ad litem such that the failure to do so amounts to reversible error. Id. at 452-454. InSappington, we held an actual conflict of interest is not required in order for the need to arise for the appointment of a guardian ad litem under Juv.R. 4(B). Id. at 453. However, we stated that a trial court is in the best position to determine whether a potential conflict of interest exists between a parent and a child. Id. at 453-454. Therefore, we held that an abuse of discretion standard should apply. Id. at 454. Specifically, reversible error exists if the record reveals "a strong enough possibility of conflict of interest between parent and child to show that the juvenile court abused its discretion by not so finding." Id. In Sappington, we reversed the judgment of a juvenile court when it failed to appoint a guardian ad litem to represent the minor where the parents had previously filed domestic violence charges against the minor, had sought to place the child out of the home, and had convinced the minor that he did not need an attorney. Id. at 454-455.
 {¶ 25} Additionally, a reviewing court should consider whether the minor was represented by counsel before the trial court. Id. at 455. Juv.R. 4(C)(1) provides that if the appointed guardian ad litem is an attorney licensed to practice in Ohio, "the guardian may also serve as counsel to the ward providing no conflict between the roles exist."
 {¶ 26} In the instant case, K.F. argues that the trial court erred in failing to appoint a guardian ad litem to represent him throughout the proceedings. K.F. asserts that a conflict of interest existed between himself and his parents because the victim of his crime was his half sister. This was demonstrated at the initial arraignment proceedings wherein K.F.'s stepfather stated that they did not want K.F. to return to their home where the victim was. In fact, the magistrate noticed this conflict, commented on the parents' impossible job as counselor to K.F. when their daughter was the victim, and therefore appointed a public defender. However, the trial court did not appoint a guardian ad litem.
 {¶ 27} Additionally, K.F.'s mother informed the court in a letter, which the court acknowledged receiving, that she "did not feel [she] could make choices in [K.F.'s] best interest." This should have alerted the lower court to a conflict of interest and the need for the appointment of a guardian ad litem. At the adjudicatory hearing on the charge, K.F.'s counsel had not permitted his parents to be present. Thus, at this hearing no parent, guardian, or guardian ad litem was present to assist K.F. or look after his best interests.
 {¶ 28} Further, when K.F. was arraigned on his probation violation, he was not represented by counsel. K.F. initially began to admit the charges against him. However, his mother specifically stated that she was not sure he understood his rights and wished to have an attorney represent him. Additionally, she stated that she felt that the counsel that had been previously appointed to him was ineffective. K.F.'s mother was upset that his previous counsel had not permitted her to be in the courtroom during the adjudicatory proceeding. Thus, a conflict had also existed between K.F.'s parents and his previous counsel. The magistrate entered a denial to the violation at the arraignment so that an attorney could be obtained.
 {¶ 29} Yet, at the adjudicatory hearing approximately a month later, K.F. was still not represented by counsel and proceeded to waive his right to counsel and admit the probation violation. This lack of representation might have stemmed from K.F.'s mother's previous dissatisfaction with the public defenders' office. K.F.'s mother's conflict with the previous public defender may have resulted in his lack of representation in the proceedings regarding the probation violation. A guardian ad litem may have insisted on K.F. being represented despite any conflict between his parents and the public defenders' office. Although K.F.'s parents were present at this hearing, neither made any statement against K.F.'s admission. This is particularly concerning considering K.F.'s appellate counsel makes a colorable argument in his second assignment of error that his conduct did not amount to a probation violation. Yet, this argument was never raised in the lower court proceedings by K.F., his parents, or any counsel. A guardian ad litem may have seen this issue and prevented K.F. from admitting to the violation.
 {¶ 30} Additionally, a guardian ad litem during the probation revocation proceedings may have been able to present alternative placement options to the court. Additionally, the guardian ad litem could have made sure that the additional psychological testing that K.F.'s mother requested and was ordered at the probation adjudication proceedings were completed and delivered to the court for its determination. Additionally, the guardian ad litem could have made sure that the reports from K.F.'s school that his mother brought to the probation disposition hearing were properly presented to the court.
 {¶ 31} The State argues that the appointment of an attorney in the lower court proceedings alleviated the need for the court to appoint a guardian ad litem. We disagree. R.C. 2151.281(A) and Juv.R. 4(B) mandate the appointment of a guardian ad litem, not the appointment of counsel. If a conflict exists between the parents and the minor, the trial court must appoint a guardian ad litem to represent the minor's interests. Further, the record does not contain any directive from the court for the public defender to act as K.F.'s guardian ad litem. Although Juv.R. 4(C)(1) allows for a guardian ad litem to also serve as the minor's counsel, this is not what occurred in this case. The lower court failed to appoint anyone to act as K.F.'s guardian ad litem. Moreover in the proceedings regarding the probation violation, K.F. was not represented by counsel.
 {¶ 32} In this case, there certainly was a strong enough possibility of a conflict of interest between K.F. and his parents that the trial court should have appointed a guardian ad litem. K.F.'s parents were torn between K.F., with whom they had struggled for years over his behavioral problems, and their four year old daughter whom he had raped. This conflict of interest was even acknowledged by the magistrate at the first arraignment hearing and yet the court did not appoint a guardian ad litem. We can only find that failing to appoint a guardian ad litem to oversee K.F.'s best interests was an abuse of discretion. K.F.'s first assignment of error is sustained.
Appellant's second assignment of error:
 {¶ 33} As we are reversing the judgment of the trial court on the first assignment of error, the second assignment of error is rendered moot.
 {¶ 34} The judgment of the trial court determining K.F. to have committed the offense of rape and all subsequent proceedings and determinations are reversed, and the matter is remanded for proceedings not inconsistent with this opinion.
Fain, P.J. and Wolff, J., concur.